UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TONI D. McDOWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:15-cv-01477-RLY-DML |
| | ) |
| NANCY A. BERRYHILL,[1] Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

# Report and Recommendation on
# Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the decision of the Commissioner of the Social Security Administration that plaintiff Toni D. McDowell is not disabled.

## Introduction

Ms. McDowell applied in July 2012 for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under Titles II and XVI, respectively, of the Social Security Act, alleging that she has been disabled since

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. As provided by Fed. R. Civ. P. 25(d), she is substituted for Carolyn W. Colvin as the defendant.

December 1, 2000. Acting for the Commissioner of the Social Security Administration following a hearing held May 20, 2014, administrative law judge James R. Norris issued a decision on July 16, 2014, finding that Ms. McDowell is not disabled. The Appeals Council denied review of the ALJ's decision on August 3, 2015, rendering the ALJ's decision for the Commissioner final. Ms. McDowell timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. McDowell contends the Commissioner's decision must be reversed and remanded because the ALJ's decision that she can perform her past relevant work as generally performed in the economy is erroneous. She argues that the ALJ's finding that she had past relevant work as a room service clerk (DOT # 324.577-010) is not supported by substantial evidence, and that at best her past work was a "composite job," which by definition is not possibly coextensive with a job described in the Dictionary of Occupational Titles.

## **Standard for Proving Disability**

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).[2] Ms. McDowell is disabled if her impairments are of such

---

[2] Two programs of disability benefits are available under the Social Security Act: DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability

severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

---

benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.* The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, materially identical provisions appear in Title XVI and at 20 C.F.R. § 416.901 *et seq.*

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Ms. McDowell was born in 1959, was 41 years old at the alleged onset of her disability in December 2000, and was 55 years old at the time of the ALJ's decision. Although Ms. McDowell worked after her alleged onset date, and her earnings in 2011 suggested she had engaged in substantial gainful activity that year, the ALJ decided the evidence of her earnings was inconclusive and continued through the sequential steps. At steps two and three, the ALJ found that Ms. McDowell had severe impairments of fibromyalgia, diabetes, post-traumatic stress disorder, and major depressive order, but that no listing was met or medically equaled.

In his RFC, the ALJ limited Ms. McDowell to light work with some additional physical and mental restrictions, including a restriction to unskilled work. Ms. McDowell does not challenge the ALJ's determinations at steps one through three or his formulation of her RFC.

With the RFC and based solely on the testimony of a vocational expert, the ALJ decided that Ms. McDowell's past relevant work was as a room service clerk (DOT #324.577-030) and that she is capable of that work as it is generally performed. Accordingly, the ALJ decided at step four that Ms. McDowell is not disabled. The ALJ did not reach step five.

## II. Ms. McDowell's Assertion of Error

Ms. McDowell raises an error at step four. She contends that her past relevant work at a hotel cannot rationally be classified as a room service clerk under the Dictionary of Occupational Titles. She also contends her work at the hotel was a composite job, meaning that the job duties encompassed "significant elements of two or more occupations." *See* SSR 82-61. She argues the ALJ could not rely on the vocational expert's testimony because it is undisputed Ms. McDowell actually performed at a higher level of exertion than the RFC permits and a single DOT job classification cannot be used as a proxy for determining how a composite job is generally performed in the economy.

To adjudicate Ms. McDowell's complaint for judicial review of the Commissioner's decision, it is not necessary to address the nature of Ms. McDowell's impairments or any of the medical evidence. The focus instead is on general step four principles and, as always, the court's standard of review. The court will first address general principles applicable at step four to give appropriate context to Ms. McDowell's assertion of error.

### A. A claimant is not disabled if she can perform her past relevant work.

As noted above in the court's description of the sequential analysis of disability under the Social Security Act and corresponding regulations, the fourth step considers the claimant's RFC and her past relevant work. If the claimant can do her past relevant work, then she is not disabled. *E.g.,* 20 C.F.R. 404.1520(a)(4)(iv): "At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled."

It is not necessary that a claimant be able to perform her past work in the manner she had performed it *and* in the manner the work is generally performed in the national economy. If she can do either, then she is not disabled. 20 C.F.R. § 404.1560(b)(2); Social Security Ruling 82-61; *Getch v. Astrue,* 539 F.3d 473, 482 (7th Cir. 2008) (even if the functional demands of the claimant's former job are greater than her capability, if she can perform the demands of that job as it is generally performed, she is not disabled).

In this case, the ALJ did not find that Ms. McDowell could perform her past work as she *actually* performed it, but instead decided she can perform the work "as generally performed in the national economy." (R. 33). That decision was based on the testimony of a vocational expert.

### B. The evidence at step four consisted of a work history report completed by Ms. McDowell and the VE's testimony.

The vocational expert testified that based on the administrative record, Ms. McDowell's past relevant work included work as a room service clerk with corresponding DOT # 324.577-010:

Q by ALJ: Dr. Parsons, I looked at the earnings record and this lady was able to earn substantial gainful activity in 2000, and 2001. And do you have enough information from the record to tell us what work was done in those years that would be past relevant work?

A by VE: ---

Q by ALJ: I can't hear you, Doctor.

A by VE: She worked as a room service clerk.

Q by ALJ: Okay. And what does the DOT tell us about that particular job?

A by VE: DOT number 324.577-010. It's considered light work with an SVP of 2, making it unskilled.

Q by ALJ: Okay.

A by VE: She performed it at the medium level, lifting 50 pounds.

(R. 59-60).

The ALJ then asked the VE whether a person with a particular RFC (matching the ALJ's ultimate determination of Ms. McDowell's RFC) could perform the past relevant work the VE had identified. The VE answered "Yes." (R. 62). The VE also testified that his testimony was not inconsistent with the Dictionary of Occupational Titles. (R. 62-63).

Ms. McDowell's counsel did not ask the vocational expert any questions about his classification of the past work. Counsel inquired only whether any jobs are

available for a person who is "off task 20 percent" or is absent from work two days per month. The VE said no. (R. 63). Ms. McDowell's counsel did not elicit any testimony from Ms. McDowell about her past work.[3] Although Ms. McDowell did not testify about her past relevant work, she had completed a work history report describing the tasks she performed in her past jobs.

In her work history report, Ms. McDowell wrote that she worked from 1998 to 2004 at the Maro Beach Hotel. (These years of employment encompass the years 2000-2001, in which Ms. McDowell had earnings constituting substantial gainful activity and about which the ALJ asked the VE to render an opinion.)[4] She listed room service captain under the form's "job title" heading and separately wrote "server-banquets" under an adjacent heading titled "type of business." In the space for describing what the job entailed generally ("What did you do all day"?), Ms. McDowell wrote: "Room Service at the Maro Beach Hotel setting up and serving to all rooms. Worked banquets setting up, clearing plates. Heavy lifting." In the space for describing whether she lifted and carried things as part of her work, Ms. McDowell wrote: "Carried Trays – pushed carts to rooms, set up then came back

---

[3]   The only testimony provided by Ms. McDowell concerned her mental health treatment. The expert psychologist who testified at the hearing inquired of Ms. McDowell about her past and current mental health treatment. (R. 54-57). Ms. McDowell's counsel also asked her to confirm she recently had been referred to a psychiatrist with whom she had an upcoming appointment. (R. 60). Counsel did not ask Ms. McDowell any other questions. (R. 61).

[4]   The work history report lists other jobs in 2004, 2005, 2006, and 2009. The parties agree that the VE offered no opinions on these other jobs, which included work in sales, as a housekeeper, as a telemarketer, and at a convenience store.

9

picked it up. Banquets set up – served plates on tray – cleared plates."  (R. 296-297).  She stated that the heaviest weight lifted was 50 pounds and the weight most frequently lifted was 10 pounds.  *Id.* at 297.

The room service clerk job at DOT #324.577-010, which the VE testified corresponds to Ms. McDowell's work as described in her work history report, is described in the DOT as follows:

> **324.577-010 ROOM-SERVICE CLERK (hotel & rest.) alternate titles: delivery-room clerk; package clerk; receiving-room clerk; runner**
>
> Performs any combination of following tasks related to serving guests in apartment hotels: Delivers and removes packages, laundry, clothes, groceries, and other articles to and from guests rooms or servidors (cabinets built into doors of hotel rooms). Collects supply orders from various departments and delivers to PURCHASING AGENT (profess. & kin.). Delivers mail to various departments and guests. Records information pertaining to services rendered. May arrange for pressing clothes and shining shoes, sending and receiving packages, and in maintaining valet service. May press clothes and shine shoes [SHOE SHINER (personal ser.)]. May supervise activities of workers engaged in delivering packages to hotel guests.
> **GOE: 09.05.03 STRENGTH: L GED: R2 M2 L2 SVP: 2 DLU: 77**

Ms. McDowell contends that the descriptions she provided in her work history report cannot in any rational sense be classified as falling within this job of room service clerk.  She asserts there is no information on her job history report suggesting that her services to hotel guests involved delivering and removing packages, mail, laundry, clothes, groceries, or other articles.

### C. The court finds that her work was misclassified.

The Commissioner makes several arguments in response to Ms. McDowell's argument that her past work was clearly misclassified by the VE.  Two of them attack the notion that the job was misclassified at all.  The third argument posits

10

that Ms. McDowell waived any error in the ALJ's reliance on the VE's testimony. The court addresses these arguments in turn below.

As to classification, the Commissioner first contends that the DOT description for room service clerk refers to the supervision "of workers engaged in delivering things to hotel guests" and because Ms. McDowell described herself as a room service captain, she cannot show her job duties were substantially different from the DOT. (Dkt. 18 at p. 8). This argument relies on language that is not contained in the DOT description. The DOT does not refer to supervising workers delivering "things" to hotel guests; it refers to supervising workers delivering "packages" to hotel guests, obviously referring to the same types of items that a room service clerk herself might deliver. The Commissioner also contends that because Ms. McDowell's work history report does not "specify what she brought to the [hotel] rooms," then the general description of room service clerk was an appropriate classification, or at least not an obvious misclassification. (Dkt. 13 at p. 7). In the court's view, this assertion requires one to put her hand in the sand.

Ms. McDowell described her "room service" job as carrying trays, pushing carts to rooms, setting up, serving, and coming back to pick it up. These words bespeak providing in-room food service to hotel guests. Indeed, based on the language used by Ms. McDowell, it is nearly impossible to imagine anything other than in-room dining service at the hotel. The items mentioned in the VE's DOT as delivered to hotel guests—packages, laundry, clothes, groceries, articles—

11

are not "set up" or "served," let alone generally carried on trays.[5] In fact, not surprisingly, there is a different job in the DOT (called room service waiter/waitress, at DOT # 311.477-034), that matches the job tasks described by Ms. McDowell in her report: serving, using trays and carts, setting up, and removing:

> **311.477-034 WAITER/WAITRESS, ROOM SERVICE (hotel & rest.)**
>
> Serves meals to guests in their rooms. Carries silverware, linen, and food on tray or uses cart. Sets up table and serves food from cart. Removes equipment from rooms.
> **GOE: 09.05.02 STRENGTH: L GED: R3 M2 L2 SVP: 3 DLU: 77**

This waiter/waitress room service job, as Ms. McDowell argues and the Commissioner does not contest, is not consistent with her RFC. The ALJ had limited Ms. McDowell to unskilled work, but the waiter/waitress room service job has a Specific Vocational Preparation (or "SVP" as shown in the bottom, bolded line of the description) of 3, which means it is semi-skilled.

This brings the court to the Commissioner's final argument why the ALJ's reliance on the VE's testimony provides substantial evidence to support the step four decision, even if Ms. McDowell's past work was misclassified as room service clerk. The Commissioner contends that because Ms. McDowell's counsel did not

---

[5] The Commissioner also states that the VE testified that the primary difference between how Ms. McDowell performed her job and how it was described in the DOT was the amount of weight lifted. (Dkt. 18 at p. 9). The statement suggests that the VE provided a list of ways in which Ms. McDowell's room service duties were similar to and different from the DOT for room service clerk. The VE did not do that. In fact, the VE said nothing about the duties of Ms. McDowell's job at the hotel and nothing about the duties of a room service clerk under the DOT *except* to say that the DOT is a light job and thus inconsistent with Ms. McDowell's statement her job actually required her to lift 50 pounds sometimes.

12

challenge at the hearing the VE's classification of her work as "room service clerk" under DOT 324.577-010, she has forfeited any misclassification error and the ALJ was entitled to accept the VE's "bottom line" testimony. Under the circumstances presented in this case, the court determines that Ms. McDowell's argument is not forfeited and the VE's testimony does not provide substantial evidence to support the ALJ's decision at step four.

### D. The VE's error in classification is obvious.

Under Social Security Ruling 00-4p, if a VE's testimony appears to conflict with the DOT, then the ALJ is required to obtain "a reasonable explanation for the apparent conflict." *See Overman v. Astrue,* 546 F.3d 456, 463 (7th Cir. 2008) (citing *Prochaska v. Barnhart,* 454 F.3d 731, 735 (7th Cir. 2006)). A VE's conclusory statement that his testimony does not conflict with the DOT does not relieve the ALJ from obtaining an explanation about an apparent conflict. But, if counsel for a claimant does not identify any conflicts at the administrative hearing, such as through questions to the VE raising such conflicts, then the claimant can obtain relief only if the conflict was so obvious the ALJ should have recognized it without any assistance from the claimant or her lawyer. As stated by the Seventh Circuit in *Overman*:

> [T]he failure of [the claimant's] counsel to identify the conflicts [between the VE's testimony and information within the DOT] at the time of the hearing is not without consequence. [The claimant] now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00-4p requires only that he ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT.

13

546 F.3d at 463 (emphasis in original).[6]

The court determines that the conflict was obvious in this case. The court simply cannot ignore that the description of job duties provided by Ms. McDowell in her work history report do not match up at all with the DOT classification provided by the VE. The court cannot ignore that before this court the Commissioner has attempted to match Ms. McDowell's room service duties to the DOT classification through a misleading paraphrase of the DOT's language and through a misleading characterization of the VE's testimony. The court cannot ignore that the description of job duties provided by Ms. McDowell obviously relate to in-room dining service. And, finally, the court cannot ignore that the DOT unsurprisingly contains an occupation for room service waiter/waitress, and that that job matches Ms. McDowell's description—but not her RFC.

This is one of the very rare cases where the VE's testimony classifying a claimant's past work under the DOT is obviously unreliable. Therefore, substantial evidence does not support the ALJ's decision that Ms. McDowell was not disabled at step four.

---

[6] The Commissioner's reliance on *Donahue v. Barnhart,* 279 F.3d 441 (7th Cir. 2002), for the proposition that a claimant who raises a discrepancy with the DOT only after the administrative hearing has acted too late is misplaced. In *Overman,* the court stated that this language in *Donahue* is dicta and that a claimant's failure to point out conflicts with the DOT at the administrative level "does not forfeit the right to argue later that" an ALJ failed to resolve an apparent conflict with the DOT. *Overman,* 546 F.3d at 463.

### III. <u>Ms. McDowell's Composite Job Argument</u>

The parties also debate whether Ms. McDowell's job at the hotel was a "composite job." Ms. McDowell contends that her job history report must be read to mean that her job at the hotel encompassed two different occupations—room service work and banquet service work—but was performed as part of one job. When a job has "significant elements of two or more occupations," it is known as a composite job and thus does not have a counterpart in the Dictionary of Occupational Titles. *See* Social Security Ruling 82-61. Without a counterpart in the DOT, it is not possible to use the DOT alone (as the VE did in this case) to determine how the job is generally performed in the national economy. *Id.*

But, unlike the DOT misclassification error addressed above in Part II, it is not obvious on the record before the ALJ that Ms. McDowell had a composite job. One fair reading of her work history report is that Ms. McDowell had two separate jobs at different times at the hotel, i.e., that she engaged in substantial gainful activity for a period of time as a room service captain (serving, carrying trays, pushing carts to rooms, setting up, and returning for pick up) and separately engaged in substantial gainful activity, at a different period of time, as a banquet server (working banquets, setting up, serving plates, and clearing plates). If so, then either independently could be classified as past relevant work. Perhaps that is not the case. Ms. McDowell could have cleared up any ambiguity in her report by testifying about her job, but her counsel chose to not present any testimony from

15

her about her work.[7] Because it is not obvious that Ms. McDowell's work was a composite job, Ms. McDowell's composite job argument is rejected.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the Commissioner's decision under sentence four of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated: 2/8/17

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

---

[7] This is different from her lack of testimony about in-room dining service. As discussed by the court in this report and recommendation, it is virtually impossible to understand Ms. McDowell's description of her room service work as anything other than in-room dining room service.